No. 31,162.

R. E. SLUSS, *Appellee*, v. THE BROWN-CRUMMER INVESTMENT COMPANY, *Appellant*.

(22 P. 2d 965.)

June 10, 1933.

Opinion filed

*K. M. Geddes,* of El Dorado, *Thomas E. Elcock* and *James G. Martin,* both of Wichita, for the appellant.

*J. B. McKay,* of El Dorado, *W. L. Cunningham, D. Arthur Walker, Fred G. Leach* and *Wm. E. Cunningham,* all of Arkansas City, for the appellee.

The opinion of the court was delivered by

THIELE, J.: This was an action to recover a money judgment on account of a controversy growing out of sales of bonds.

The petition contains numbered paragraphs, the first alleging residence, etc., of the plaintiff, the second that defendant is a Kansas corporation and that at all times mentioned it has maintained an office and place of business in El Dorado, Kan. The third paragraph charges that defendant was aware that plaintiff owned Kansas municipal bonds maturing from time to time and acting through its agent and representative, Murray T. Crummer, solicited plaintiff to purchase bonds and securities as he might require, and "orally promised and agreed that with respect to any and all bonds or other securities which the plaintiff might at any time acquire from the de-

fendant, the defendant would repurchase the same on plaintiff's demand for an amount equal to the original purchase price with accrued interest," etc. The fourth paragraph charges that on June 26, 1926, defendant, through its agent, Crummer, solicited plaintiff to purchase certain Hidalgo county, Texas, refunding warrants, representing they were as safe and sound for investment as any Kansas municipal bonds; that they were gilt-edge securities, that defendant had experts investigate the warrants thoroughly and carefully and they constituted as safe an investment as plaintiff could make; that plaintiff informed defendant's agent he was without knowledge as to said securities and if he purchased he would do so solely in reliance upon defendant's statements, and that defendant's agent repeated the oral repurchase agreement, and plaintiff, believing and relying upon such oral promises, statements and agreements, purchased said warrants. In paragraphs 5 to 10, both inclusive, similar allegations are made with respect to six other bond purchases. The eleventh paragraph repeats the allegation that plaintiff was without knowledge as to the value of the bonds and securities, imposed confidence in defendant's agent and bought relying upon his statements and promises, and that defendant was aware thereof. The twelfth paragraph alleges that defendant's oral promises, statements and agreements were false, fraudulent and untrue, that the securities sold to plaintiff were not as safe and sound for investment as any Kansas municipal bond, that defendant had not had experts investigate, and they did not constitute a safe investment; that defendant never had any intention of carrying out its repurchase agreement unless it was to its advantage so to do and entered into such agreement fraudulently to induce plaintiff to purchase; that plaintiff acted in good faith and defendant in bad faith, and that "Plaintiff did not learn or ascertain of the falsity of such statements, agreements and representations and of the bad faith of the defendant in the premises until within six months next preceding the filing of this petition." The thirteenth paragraph alleges matter with respect to the worth of the bonds and securities. The fourteenth paragraph alleges that on February 20, 1932, plaintiff served on defendant's agent, Crummer, a written demand that defendant repurchase said bonds, etc., a copy being attached to the petition, and that notwithstanding defendant neglected and refused to purchase said bonds and securities or any of them; that plaintiff is ready, able and willing to deliver

the bonds, etc., to defendant upon repurchase, and tenders same into court, etc. The remaining paragraph is a prayer for a money judgment and for such other and further relief as plaintiff may be entitled to and for costs.

Summons was issued and served by the sheriff of Butler county, whose return shows he summoned the Brown-Crummer Investment Company, a corporation, by delivering to M. T. Crummer, agent for and on behalf of said company, at its office and usual place of business in El Dorado, a copy thereof; that he could not find the president, vice president, treasurer, cashier, trustee, chairman of the board of directors, or other managing officers of said company in Butler county; that no person on whom service could be made in Butler county had been appointed by the defendant and that after endeavoring to get service on the officers of the company he made service on M. T. Crummer, agent, he being the person in charge of the office and usual place of business of said company in El Dorado, and he being the person held out to the public by said company as their agent and representative at El Dorado. "Hence I made service on M. T. Crummer, agent, by delivering to him a copy of the summons herein . . ."

The defendant appeared specially and moved to set aside the service on eleven grounds. After hearing thereon, to which reference will be made, the motion was denied. Defendant then filed its plea in abatement, raising, in substance, the same matters that were presented on its motion to set aside the service, which plea was overruled. Defendant then filed a motion to compel plaintiff to separately state and number his several causes of action, which motion was denied. Defendant then filed a motion to require plaintiff to elect, in which allegations are made as to causes of action on repurchase contract, for relief on account of fraud, for rescission, etc., being blended, confused and intermingled, and to require plaintiff to elect which of the several inconsistent remedies he will pursue, which motion the court denied. Then followed a motion asking that plaintiff make his petition more definite and certain and to strike, and this motion was likewise denied.

The defendant then filed its demurrer, setting up all of the statutory grounds except that another action was pending between the same parties for the same cause. The demurrer was overruled and defendant given time to answer.

The defendant appeals from each and all of the above mentioned rulings, and so far as need be they will be noticed *seriatim:*

On the hearing on the motion to quash, evidence was taken as to the status of the company, where its principal place of business was, the agency, powers and duties of M. T. Crummer, the particular manner in which Crummer was served, whether or not the defendant company maintained a branch office in El Dorado, and thereafter the court overruled the motion. In connection with the argument as to the correctness of the court's ruling, much space is devoted to whether, by reason of one statement therein, the defendant company entered a general appearance, but our conclusion obviates any necessity of discussing that feature. In connection with venue of actions against domestic corporations, our code provides that, except in instances not material here, an action "may be brought in the county in which it is situated, or has its principal office or place of business, or in which any of the principal officers thereof may reside, or may be summoned," etc. (R. S. 60-504). And R. S. 60-509 provides that every other action must be brought in the county in which the defendant or some one of the defendants resides or may be summoned. R. S. 60-2518 provides for service of a summons on a corporation, viz.:

"A summons against a corporation may be served upon the president, mayor, chairman of the board of directors, or trustees, or other chief officer; or, if its chief officer is not found in the county, upon its cashier, treasurer, secretary, clerk or managing agent; or if none of the aforesaid officers can be found, by a copy left at the office or usual place of business of such corporation, with the person having charge thereof."

The court's ruling on the motion to quash implies a finding favorable to the plaintiff as to the issue whether defendant had a branch office in El Dorado, and as to any other facts in issue with reference to Crummer's and the company's status, and includes the finding that the company had a branch office and was *situated* in El Dorado. The return, while possibly inconsistent in some of its recitals, shows that those persons denominated as "chief officers" were not found in the county, nor the cashier, treasurer, secretary or clerk, and that therefore service was made upon "M. T. Crummer, agent, he being the person in charge of the office and usual place of business of said company." The term "managing agent" was not used in the return, but the trial court, after hearing disputed evidence as to his powers and duties and the general operations of the defendant company and

its agent in El Dorado, held service upon him good as against the company. Without reviewing what is said therein, we are of the opinion that under *McLeod v. Trusler Grain Co.*, 127 Kan. 119, 272 Pac. 119, the service was good, and that the trial court's ruling was correct.

As substantially the same questions were raised by the plea in abatement as were raised by the motion to quash, it will not be discussed.

So far as the motion to separately state and number is concerned, it must first be remarked that the matter is addressed to the discretion of the trial court (R. S. 60-741), and there is nothing here to show any abuse of that discretion. It is not apparent, at this time, as will be discussed later, whether there are several causes of action. It may be noted that the paragraphs of the petition are numbered, and at least so far as the statements of fact now contained are concerned, little difficulty need be experienced in following out the various transactions enumerated, whether it ultimately develops that one or more causes of action are stated, and although more properly to be hereafter discussed, it may be said that on account of the court's discretion in the matter, its ruling cannot be construed either as holding there is one cause of action to enforce the repurchase agreement or one cause or several causes of action for relief on the ground of fraud.

On the assumption that inconsistent causes of action were intermingled and that inconsistent remedies were sought, defendant filed its motion to compel plaintiff to elect, and after this motion was denied filed its motion to make definite and certain and to strike. These motions will be discussed together. Appellant contends that the petition, viewed from one aspect, is on the contract of repurchase and, if so, is in affirmance of the contract; or, from another aspect, is for rescission and relief on the ground of fraud; or, from another aspect, for damages on account of fraud. Assuming correctness, for the time being, of either construction, the first two would be actions *ex contractu* and the third *ex delicto*. While the prayer is no part of the petition, it may sometimes be referred to to assist in determining the character of the pleading, and the petition here, read in connection with the prayer, shows that the action is not for damages arising in tort. If it were doubtful whether the action was on contract or in tort, every intendment would be resolved in favor of construing it as an action on contract. See

*Railway Co. v. Hutchings,* 78 Kan. 758, 99 Pac. 230, and *Delaney v. Implement Co.,* 79 Kan. 126, 98 Kan. 781.

It will be noted that appellee pleads a contract of repurchase and that shortly before the filing of the petition demand for performance thereof was made. This would be in affirmance of the contract. It will also be noted that the petition alleges facts constituting fraud and that the fraud was discovered within six months preceding the filing of the petition and it could, therefore, be said that the action is for rescission, for the prayer asks for a money judgment which at least approximates the face value of the bonds and accrued interest. One aspect is that plaintiff seeks to affirm the contract; the other is that he seeks to disaffirm it. Plaintiff cites *Cockrell v. Henderson,* 81 Kan. 335, 105 Pac. 443, and other cases of similar import and contends that under them and the provisions of the code (R. S. 60-704) all he need do is to state his facts in ordinary and concise language; that his petition is sufficient, is not subject to motion to make definite and certain, to strike, or to compel an election. In the above cited case, however, no motions were made and no question raised until on demurrer to the evidence. Here a motion was filed in due time to ascertain whether plaintiff discovered the fraud before or after he served his demand for repurchase. If it developed that the discovery of fraud was first, then it might be said the fraud was waived and that plaintiff had elected to stand on his repurchase contract, in which event the allegations with respect to fraud were immaterial and subject to being stricken out. If the fraud were discovered after the notice to repurchase was served, then the action might proceed for rescission. Plaintiff, in argument, says that if he had an election in the matter, it was made when the demand for repurchase was made and that nothing he now says will change the situation. That may possibly be true, but in the present state of the pleadings it cannot be ascertained whether the demand was served before or after the fraud was discovered and, therefore, whether or not an election has been made. Neither can it be said that the allegation that when defendant made the repurchase agreement it had no intention to perform it, is decisive. All of this might be proved and warrant rescission on the ground of fraud, yet whenever a repurchase agreement is proved, it would warrant relief under the terms of the agreement even though defendant never intended to perform it.

In *Spaulding v. Dague,* 120 Kan. 510, 243 Pac. 1045, the syllabus states:

"Where one conveys land for a valuable consideration and contends that he was induced to execute the conveyance because of an agreement made by the grantee to reconvey on certain terms, he must either disaffirm the conveyance and seek to set it aside for fraud or some other sufficient reason, or affirm the conveyance and rely upon the agreement to reconvey."

In *Bonsteel v. White,* 127 Kan.. 843, 845, 275 Pac. 163, it was said:

"A pleader cannot affirm and disaffirm a contract where it has to do with remedies and the election thereof."

And see *Beneke v. Bankers Mortgage Co.,* 119 Kan. 105, 237 Pac. 932; *Hamilton v. McGinnis,* 119 Kan. 719, 241 Pac. 690; *Pitt v. Keenan,* 124 Kan. 810, 262 Pac. 567; *Baltimore American Ins. Co. v. Zimmerman,* 127 Kan. 145, 272 Pac. 165, and cases cited therein.

It is apparent that plaintiff could proceed on one theory, but he could not on both. Defendant's motion to make definite and certain and to strike involved other matters than those discussed here, but it is clear that, in part, at least, it should have been sustained. Plaintiff should have been compelled to state the date he discovered the fraud complained of or, if impossible to state the exact date, to state whether it was before or after service of the demand for repurchase. After such an amendment had been made; then the question of whether or not parts of the petition should or should not be stricken out could be intelligently considered. In the present state of the pleadings more cannot be said as to this feature.

In *Grentner v. Fehrenschield,* 64 Kan. 764, 68 Pac. 619, it was held that plaintiff must frame his petition on a distinct and definite theory, and upon that theory the facts alleged must state a good cause of action. The case has been cited on a number of occasions, and the force thereof has been diminished. Some of the later cases are: *Tire Co. v. Kirk,* 102 Kan. 418, 420, 170 Pac. 811; *Wendel v. Implement Co.,* 112 Kan. 336, 337, 210 Pac. 1100; *Brooks v. Weik,* 114 Kan. 402, 408, 219 Pac. 528; *Cramer v. Overfield,* 115 Kan. 197, 198, 222 Pac. 85; and *McDowell v. Geist,* 134 Kan. 789, 793, 8 P. 2d 372.

Without reviewing the distinctions made in the above decisions, it may be said that, notwithstanding the greater liberality now allowed, some weight is to be given to the fact that defendant

promptly filed its motions in an effort to learn whether plaintiff was suing for rescission on account of fraud, or for the enforcement of the repurchase agreement. The plaintiff resisted all of these motions, and now, while it may be possible by slighting certain allegations—and which are to be slighted depends on what result is to be reached—to say that the petition states a distinct cause of action for a distinct remedy, defendant is entitled to know which. No one would argue that plaintiff could frame an out-and-out petition for rescission on the ground of fraud, and, if defeated thereon, could then start over and frame one on the theory of a repurchase agreement and try it out. See *Baltimore American Ins. Co. v. Zimmerman,* supra, and cases cited therein. While the general rule is that where a general demurrer is filed to a petition, no motion to make it more definite having been presented, the demurrer should be overruled if the facts stated constitute a cause of action, whether well pleaded or not (*Bowersox v. Hall,* 73 Kan. 99, 84 Pac. 557), and inconsistent causes of action or inconsistent defenses do not render the pleading demurrable (*Fetzer v. Williams,* 80 Kan. 554, 103 Pac. 77; *Brooks v. Weik,* supra; *Trousdale v. Amerman,* 124 Kan. 614, 261 Pac. 826), a somewhat different rule must be applied where plaintiff, as a result of procuring rulings favorable to him, defeats every effort of the defendant to ascertain on what theory he founds his cause of action. (*Stewart v. Balderston,* 10 Kan. 131; *Mergen v. Railroad Co.,* 104 Kan. 811, 812, 180 Pac. 736.) If the petition is not drawn upon a single and definite theory, or there is such a confusion of theories alleged that the court cannot determine from the general scope of the petition upon which of several theories a recovery is sought, it is insufficient. (See Dassler's Kan. Civ. Code, 2d ed., 220, and cases cited.) Under the circumstances of this case it is impossible to determine on what definite theory the plaintiff seeks recovery or on which of two inconsistent theories he relies, and the demurrer should have been sustained. (49 C. J. 379, 385.)

In the briefs authorities other than those referred to are cited, but time and space forbid a discussion of each of them. There is also considerable discussion with reference to the force and effect of repurchase agreements and the time within which actions to enforce the same must be brought. It is premature to discuss this phase of the matter; when the petition is amended it may not state a cause based on the repurchase agreement.

The rulings of the trial court with respect to the motion to quash the service of summons and the plea in abatement are sustained, as is the ruling on the motion to separately state and number. On account of the erroneous rulings on the motion to make definite and certain and to strike and on the demurrer, the cause is reversed and remanded for further proceedings consistent herewith.